**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JAMES HALL                                      *

        Plaintiff                    *

    v.                                         *        Civil Action No. GLR-18-2167

WARDEN MAJOR C. ROWE, et al.       *

        Defendants                *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

     WARDEN MAJOR C. ROWE, CAPTAIN E. LONG and CHRIS SHOCKEY, three of the Defendants (hereinafter also referred to, collectively, as "Defendants"), by KARPINSKI, COLARESI & KARP, P.A. and KEVIN KARPINSKI, their attorneys, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss or, in the Alternative, for Summary Judgment.

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

STATEMENT OF FACTS ........................................................................................2

    I.    Allegations Regarding The Medical Personnel At
        Washington County Detention Center ...................................................3

    II.   Allegations Regarding Substandard Medical Care ............................3

        A.  Corrective Surgery for Carpal Tunnel Syndrome ...................................4

        B.  Replacement or Repair of Dentures ........................................................7

    III.  Allegation Regarding Failure to Properly Screen Inmates .................8

    IV.  Allegation Regarding Court Access......................................................10

V.      Plaintiff Submitted A Grievance Form Regarding His Medical
        Care, But He Did Not Submit Any Administrative Grievances
        Concerning Cell Assignment or Court Access ....................................................11

ARGUMENT ....................................................................................................................12

  I.    Standards of Review .............................................................................................12

 II.    Plaintiff's Claim That He Was Denied Medical Care Fails
        Because As a Matter Of Established Law, Defendants Rowe
        and Long Were Entitled To Rely On The Medical Judgment
        of Defendant Stewart ...........................................................................................14

III.    In the Alternative, Defendants Rowe And Long Are
        Entitled To Qualified Immunity From Plaintiff's Claim Under
        42 U.S.C. § 1983 ..................................................................................................17

        A.  Plaintiff's Constitutional Rights Were Not Violated .................................17

        B.  Even If There Had Been A Violation of Plaintiff's
            Constitutional Rights, And There Was None, The Rights
            Were Not Clearly Established .....................................................................20

IV.     All Claims Fail Because Plaintiff Failed To Exhaust
        WCDC's Grievance Procedure ..............................................................................21

 V.     Even If It Were Appropriate For This Court To Consider
        Plaintiff's Claims Concerning Cell Assignment And Access
        To The Court, And It Is Not, Those Claims Fail ................................................23

CONCLUSION .................................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) ..............................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................12

*Boateng v. InterAmerican Univ., Inc.*, 210 F. 3d 56 (1st Cir. 2000)........................13

*Booth v. Churner*, 532 U.S. 731 (2001)...............................................................22

*Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) ...........................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................13

*Cook v. Jones*, 606 F.Appx. 131, 132 (4th Cir. 2015) ........................................18

*Danser v. Stansberry*, 772 F.3d 294 (4th Cir. 2014)............................................18

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,*
    213 F. 3d 175 (4th Cir. 2000) ....................................................................12

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994).............2,14,17,18

*Ficker v. Chesapeake & Potomac Telephone Co.,*
    596 F.Supp. 900 (D.Md. 1984) ..................................................................13

*Gardner v. United States*, 184 F.Supp. 3d 175 (D.Md. 2016) ...............................15,16

*Gibbs v. Bureau of Prisons*, 986 F.Supp. 941 (D.Md. 1997)................................22

*Goodman v. Runion*, 676 Fed.Appx. 156 (4th Cir. 2017)………………………….17, 20

*Haley v. Corcoran*, 659 F.Supp. 2d 714 (D.Md. 2009) ........................................13

*Henson v. CSC Credit Servs.*, 29 F. 3d 280 (7th Cir. 1994) ................................13

*Marshall v. Stewart*, No. CV TDC–16–1645, 2017 WL 3671160
    (D.Md. Aug. 23, 2017)...............................................................................16

*Martin Marietta Corp. v. International Telecomm. Satellite Org.,*
    991 F.2d 94 (4th Cit. 1992)........................................................................12

*Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir. 1993) .............................................................20

*Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990)..............................................................14,15

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ...................................18

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)......................17

*Phillip v. Scinto*, 138 S.Ct. 447, 199 L.Ed. 2d 340 (2017) ...................................................18

*Porter v. Nussle*, 534 U.S. 516, 532 (2002)..........................................................................22

*Riggins v. Green*, No. PJM–09–289, 2009 WL 7042240, at *3
    (D.Md. May 21, 2009), *aff'd* 332 F.App'x. 867 (4th Cir. 2009) ....................................23

*Sandin v. Conner*, 515 U.S. 472 (1995)..........................................................................23, 24

*Scinto v. Stansberry*, 841 F.3d 219 (4th Cir. 2016) ............................................................18

*Scott v. Harris*, 550 U.S. 372 (2007) ..................................................................................13

*Siggers-El v. Barlow*, 433 F.Supp.2d 811 (E.D. Mich. 2006) .............................................21

*Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) .............................................................15

*Strickland v. Halsey*, 638 F.Appx. 179 (4th Cir. 2015) .......................................................17

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) ....................................................................23

*Wikimedia Found. V. Nat'l Sec. Agency*, 857 F.3d 193 (4th Cir. 2017)...............................12

*West v. Atkins*, 815 F.2d 993 (4th Cir. 1987)......................................................................20

*Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985) .................................................................20

## Federal Constitution

Eighth Amendment .................................................................................................*passim*

## Federal Statutes

42 U.S.C. § 1997e(a).................................................................................................21

42 U.S.C. § 1983.................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)...............................................................................................12

Fed. R. Civ. P. 12(b)(6)………………………………………………………..12

## INTRODUCTION AND SUMMARY OF ARGUMENT

*Pro se* plaintiff James Hall ("Plaintiff") was a pre-trial detainee at the Washington County Detention Center ("WCDC") from August 11, 2017 to September 28, 2017 when, following his conviction on second degree assault charges, he was released on probation.  A copy of the online docket of *State of Maryland v. James Edward Hall*, Case No. 0V00102550, adjudicated in the District Court of Maryland for Washington County, is attached for the Court's reference as **Exhibit A**.  On June 15, 2018, Plaintiff's probation was revoked.  *Id*.  Thereafter, Plaintiff was incarcerated at WCDC until on or about January 22, 2019.  *See* WCDC Release Document, attached hereto as **Exhibit B**.  Plaintiff brings suit against Defendants Rowe and Long with respect to his medical treatment at WCDC and against Defendant Shockey in connection with inmate cell assignment. *See* Amended Complaint, ECF No. 10.  Plaintiff brings his claim against these Defendants in their individual capacities.[1]  *See* Amended Complaint at 1, ECF No. 10.

Plaintiff claims that Defendants Rowe and Long were deliberately indifferent to the allegedly substandard medical care that he received from WCDC's medical personnel because he was (1) denied follow-up care at his preferred clinic and (2) denied replacement or repaired dentures for non-medical reasons.  *Id*. at 1–2.  Plaintiff also claims that WCDC failed to properly screen inmates, which precipitated his having to be placed on Protective Custody.  *Id*. at 7.  He then alleges that his placement in Protective Custody resulted in his endurance of several unconstitutional conditions to which Defendant Shockey was deliberately indifferent.  *Id.*  Plaintiff

---

[1] The Amended Complaint does not indicate what relief is sought by Plaintiff, but Plaintiff's prior Supplemental Complaint pled $30,000.00 in compensatory damages, $30,000.00 in nominal damages, $250,000.00 in punitive damages and $350,000.00 in special damages. *See generally* Amended Complaint, ECF No. 10; Supplemental Complaint, ECF No. 4.

alleges that his claims arise under the Cruel and Unusual Punishments Clause of the Eighth Amendment.

Preliminarily, as a matter of well-established law, Defendants Rowe and Long are entitled to dismissal or summary judgment because they are permitted to rely entirely upon the medical judgment of WCDC's medical staff as to Plaintiff's medical treatment.  In the alternative, dismissal or summary judgment is warranted on the basis that Defendants Rowe and Long are entitled to qualified immunity given their status as public officials and Plaintiff's failure to satisfy the medical needs test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994). Moreover, Plaintiff failed to exhaust WCDC's Grievance Procedure as federal law required him to before bringing the instant action.  As discussed below, Plaintiff's Grievance Form with respect to medical care was received by WCDC after suit was initiated.  No Grievance Form was expressly filed or appealed with respect to inmate cell assignment.  Therefore, the claims are statutorily barred.

In the event that this Honorable Court does not find that the claims are barred, however, Defendants remain entitled to dismissal or summary judgment.  The United States Supreme Court has stated that the day-to-day operations of prison detention centers, like cell assignment, are within the province of detention centers.  Courts afford prison detention centers great deference for sound policy reasons, including security and safety.  Therefore, Plaintiff's Complaint fails to state a claim and must be dismissed.

## STATEMENT OF FACTS

Solely for the purpose of this Motion, and without conceding the veracity of any representation by Plaintiff, Defendants recite the following pertinent facts drawn from the

Amended Complaint.   Additional facts are elicited from Plaintiff's Inmate File and Medical Record for the purpose of supplementation and clarification.

**I.      Allegations Regarding The Medical Personnel At Washington County Detention Center**.

The first prison condition that Plaintiff complains of as it relates to Defendant Rowe is his alleged decision to "[adopt] and [implement] policies … intended to contain the costs of providing medical services to inmates…." *See* Amended Complaint at 2, ECF No. 10. A fair reading of the Amended Complaint is that Defendant Rowe sought to minimize WCDC's medical expenses by giving Defendant Correct Care Solution (hereinafter "Defendant CCS") his *imprimatur* to: (1) deny inmates access to preferred physicians for follow-up care and (2) employ medical professionals who are neither qualified nor properly trained to render medical services. *Id*.

Defendant CCS is an independent medical provider that Washington County contracts with to provide health services to WCDC. *See* Affidavit of Major Craig Rowe, ¶ 5 attached hereto as **Exhibit C**. Decision-making authority over the provision of medical services to inmates at WCDC is contractually granted to Defendant CCS. *Id*. at ¶ 6. This grant naturally extends to and includes the staffing of medical personnel at WCDC. *Id*. Defendant Rowe testifies in his Affidavit that he has no decision-making authority with regards to renewing the contract between Washington County and Defendant CCS. *Id*.

**II.      Allegations Regarding Substandard Medical Care**.

Plaintiff alleges a causal relationship between Defendant Rowe's supposed efforts to reduce medical expenses and his perceived receipt of "medical care that did not meet the minimum requirement of the 8th Amendment." Amended Complaint at 2, ECF No. 10. To support this charge, Plaintiff claims that on August 3, 2018, Defendant Stewart failed to treat his broken

dentures and permit follow-up care for his carpal tunnel syndrome.[2]  *Id*. at 1–2.   It is further

claimed that "[Defendant Stewart] told Plaintiff … 'we don't do follow-up care here and we don't

do dentures[.] [W]e are not the prison[.] [W]e don't have to do nothing for your medical needs."

*Id*. at 2.  He also alleges that Defendant Stewart told him that, "unless your arms are [b]lack and

[f]alling off you are not going nowhere."  *Id*.  Defendant Stewart purportedly also failed to properly

investigate Plaintiff's past medical treatment prior to denying Plaintiff the opportunity to have

corrective surgery for his carpal tunnel syndrome.  *Id.* at 4–5.  Plaintiff suggests that the operative

effects of these denials will require him "to undergo additional surgery" and endure "a lifelong

[handicap]."  *Id*. at 3.  "Cost saving measures" are alleged to have been "the moving force behind"

the alleged denials of medical treatment and/or follow-up care.  *Id*. at 4.  This assertion, however,

is rebutted by record evidence, as explained in Sections IIA and IIB below.

> **A.     Corrective Surgery For Carpal Tunnel Syndrome**.

Plaintiff's Inmate File reveals that WCDC obtained Plaintiff's medical records - - insofar

as they relate to his carpal tunnel syndrome - - on or about August 24, 2017, from his personal

physician's clinic, namely, Robinwood Orthopedic Specialty Center (hereinafter "Robinwood

Orthopedic").  *See* Medical Records Selection, attached hereto as **Exhibit D,** Medical Records

Transfer.  Plaintiff underwent carpal tunnel surgery on his right hand on February 9, 2017.  *Id*. at

Operative Report.  No complications arose during this surgery.  *Id*. at Patient Note dated February

---

[2] Both of these ailments, characterized as serious medical conditions, arose outside of the time that Plaintiff was incarcerated at WCDC.  The Amended Complaint states that "Plaintiff personally placed [Defendant Stewart] on notice that he was previously prescribed FUD/FLD ([f]ull upper/full lower [d]entures) by Dr. Kionka of Delaware Correctional Center…"  Amended Complaint at 1, ECF No. 10.  It further implies that Plaintiff's dentures were broken when he was arrested during the time that he was on probation.  *Id*. at 4.  Plaintiff also states that he notified Defendant Stewart of his carpal tunnel syndrome in July of 2017 when he was held at WCDC as a pre-trial detainee.  *Id*. at 2.

23, 2017.  On March 29, 2017, Robinwood Orthopedic noted that "Plaintiff has had success with right ulnar nerve release … and right carpal tunnel release" and that Plaintiff "would like surgery on the left [hand] as well…."  *Id*. at Patient Note dated March 29, 2017.  There does not appear to be an operative report for Plaintiff's left hand, but it is believed that Plaintiff received surgery on April 6, 2017.  *Id*. at Patient Note dated June 10, 2017.

Plaintiff's Robinwood Orthopedic medical records reveal that his post-operative treatment consisted of medication, time off from work, activity restrictions and physical therapy.  *Id*. at Patient Notes dated February 23, 2017 and March 29, 2017.  These records do not indicate that either Plaintiff or Robinwood Orthopedic contemplated additional surgery as being medically required at the time.  *Id*.  Rather, these records show that Plaintiff could manage the pain on his own with intermittent evaluations by Robinwood Orthopedic.  *Id.*  The most up-to-date Patient Note in WCDC's possession shows that Plaintiff was scheduled to return to Robinwood Orthopedic for a routine evaluation at some point in early August 2017.  *Id*. at Patient Note dated June 10, 2017.

Plaintiff alleges that he was last evaluated by Robinwood Orthopedic in March of 2018 at its Frederick office.[3]  Amended Complaint at 4, ECF No. 10.  He further alleges that "it was *suggested* that Plaintiff have corrective surgery" during this evaluation and that he notified Defendant Stewart of this recommendation on August 17, 2018.[4]  *Id*. (emphasis added); *see also* **Exhibit D**, Medical Records Selection, Plaintiff's August 13, 2018, Inmate Request Form (indicating that Plaintiff notified WCDC of a perceived need for corrective surgery during his

---

[3] Plaintiff was on probation in March of 2018.  **Exhibit A**, Docket for *State of Maryland v. James Edward Hall*.

[4] Plaintiff's Inmate File does not include this alleged March, 2018, evaluation given the fact that the Robinwood Orthopedic records were obtained in August, 2017.  **Exhibit D**, Medical Records Transfer.

initial intake screening on June 15, 2018, as well).  Plaintiff does not articulate whether it was his intention to pursue corrective surgery in March 2018.  *See generally* Amended Complaint. Relatedly, Plaintiff does not specify whether a surgery date was scheduled.  *Id.*

This evaluation is referenced in Defendant Stewart's medical note following Plaintiff's sick-call on August 17, 2018.  **Exhibit D**, Medical Sick Call.  The medical note states:

> Referred from MH for complaint of chronic pain that has been previously addressed.  Has been seen by ortho as late as 3-17 [sic] with desire for surgical correction of carpal tunnel/ulnar nerve issues x yrs. **Never followed up. ["] I was in the process of going when I got arrested.**"  Again arguing about need for jail to supply his dentures.  **Angry and left exam room when advised these are chro9nic [sic] issues that will need further eval and consideration but no guarantee of "emergency" surgery as he demands. Refused exam and left room angry "the Judge will hear this.**"

*Id.* (emphasis added).  Plaintiff's explanation for why he did not undergo corrective surgery while he was on probation does not account for the three month period between his evaluation in March, 2018 and arrest in June, 2018.  Nonetheless, Plaintiff claims that Defendant Stewart "intentionally interfered" with his medical treatment by denying him the opportunity to have corrective surgery at Robinwood Orthopedic.  Amended Complaint at 4–5, ECF No. 10.  Pertinent to this claim, however, is the fact that WCDC was still reviewing Plaintiff's August 14, 2018 Grievance concerning "substandard medical care" as of August 17, 2018.  *See* **Exhibit E**, Plaintiff's Grievance Form.  During its review, WCDC personnel contacted Robinwood Orthopedic and learned that Plaintiff had last visited its Hagerstown office in October 2017.  *Id.*  To the best of Defendants' understanding and belief, this was a routine evaluation following which Plaintiff's treatment plan was unchanged.  *Id.*

Plaintiff's Grievance Form with respect to his carpal tunnel syndrome was denied on the grounds that the ailment was not an issue "requiring emergency or urgent treatment…."  *Id.*  An appeal was submitted to Defendant Rowe, who affirmed.  *Id.*  Plaintiff now alleges, for the first

time, and without support, that a basis on which Defendant Long rested the denial is "because [Defendant Long] is a partial owner of [WCDC]."  *See* Amended Complaint at 6, ECF No. 10.

**B.    Replacement Or Repair Of Dentures**.

Plaintiff next complains that he received inadequate medical care due to cost considerations.  *See generally* Amended Complaint.  Plaintiff claims that he was diagnosed with gastrointestinal reflux disease prior to being incarcerated at WCDC.  *Id*. at 3–4.  As a result of this diagnosis, Plaintiff was given his dentures to guard against "stomach cancer, [esophagus] cancer, [and] intestinal cancer…."  *Id*. at 1; 3–4.  Therefore, Plaintiff alleges that a medical need arose to replace his dentures after they became damaged during his arrest.  *Id*. at 4.  The Amended Complaint attributes to Defendants the cost of paying for repairing or replacing Plaintiff's dentures because "the State of Maryland deprived [Plaintiff] of [his] liberty[,]" not the arresting agency, and, therefore, "is responsible for [supplying Plaintiff] with adequate medical, dental, vision, [and] mental health" treatment.  *Id*.

Record evidence shows that Plaintiff discussed the condition of his dentures with Defendant CCS personnel multiple times with varying levels of concern.  On June 15, 2018, Registered Nurse Cathy L. Marshall recorded Plaintiff as complaining of a "current painful dental condition," namely, "edentulous upper and lower full dentures."  *See* **Exhibit D**, Medical Records Selection, Receiving Screening.  The issue appears to have next been discussed on August 14, 2018, when Defendant Stewart:

> spoke with IM with Officer Grove present, [h]e claims the police broke his dentures when he was arrested and that he glued them since he came to jail. I informed him that medical will not be replacing his dentures that he would have to seek replacement from the police not the jail.  I offered him a soft mechanical diet that would allow for him to eat without the dentures[.] [H]e stated 'nope, I don't want that[,]" [] I will be getting new dentures.

7

*Id.* at Chart Notes.  Defendant Stewart then observed on August 27, 2018, that Plaintiff's teeth were in "fair" condition, his gums "good," and that he was without pain or discomfort.  *Id.* at C-757 Health Assessment.[5]

Ultimately, the Grievance Form that Plaintiff submitted regarding his desire for follow-up care at Robinwood Orthopedic also sought review of Defendant CCS' refusal to repair his dentures.  *See* **Exhibit E**, Plaintiff's Grievance Form.  As was the case above, Plaintiff's grievance was denied and later affirmed on appeal.  *Id.*  Defendant Rowe relied upon Defendant CCS' medical professionals' determination that the "dentures…are not an emergency or urgent matter" in denying Plaintiff's grievance.  *Id.*

**III.** **Allegation Regarding Failure To Properly Screen Inmates**.

The second prison condition that Plaintiff complains of is Defendants' purported failure to assign inmate cells according to offenses.  *Id.* at 7.  Plaintiff claims that he was "forced" to "sign on to protective custody" as a result of Defendant Shockey's "failure to protect [him] from harm[.]"[6]  *Id.*  A litany of perceived injustices are recited as a result of Plaintiff being placed in Protective Custody, namely, his exposure to exceedingly long lock-in cell times, feelings of isolation, weight gain due to reduced exercise, extreme heat from a lack of ventilation in his cell and the onset of unnecessary emotional and physical pain.  *Id.*  Plaintiff alleges that Defendant

---

[5] Relatedly, the Amended Complaint does not appear to allege that Plaintiff struggled to eat as a result of his broken dentures.  *See generally* Amended Complaint, ECF No. 10.

[6] The Amended Complaint does not articulate the harm suffered by Plaintiff, if any, but it does reference Inmate Jack Phillips.  Amended Complaint at 7, ECF No. 10.  To the extent that this Honorable Court construes Plaintiff's previous factual allegations against Inmate Phillips as being incorporated in the Amended Complaint, then the purported harm mentioned therein likely refers to the fact that Plaintiff allegedly notified a State's Attorney that Inmate Phillips had confessed to having committed murder to Plaintiff.  *See* Supplemental Complaint at 6, ECF No. 4.

Shockey knew of these conditions, but that Defendant Shockey "[refused] to take reasonable measures to abate" them. *Id*. at 8.

Plaintiff's Inmate File shows that he submitted an Inmate Request Form because he wanted to be assigned to Protective Custody. *See* Plaintiff's Inmate Request Forms, attached hereto as **Exhibit F**. On July 30, 2018, Plaintiff wrote a Shift Commander at WCDC and stated the following:

> Sir[,] I'm in fear for my life, I want to be moved to Protective Custody [i]mmediately[.] I'm a potential State witness and State's Attorney Cumti isn't moving fast enough. I was approached by the Defendant Jack Phillips in a threatening manner[.] [H]e's suspicious because his attorney tipped him off. Please respond [i]mmediately … Jack went to court today.

*Id*. Plaintiff's request for Protective Custody was granted that same day by Sergeant Kelbaugh who is referred to as the "confining authority." *See* Plaintiff's Protective Custody Records, attached hereto as **Exhibit G**. Defendant Shockey reviewed Sergeant Kelbaugh's decision. *Id*. He also periodically reviewed the continued need for Protective Custody throughout Plaintiff's placement. *Id*. These reviews occurred on August 1, 2018, August 29, 2018, September 14, 2018 and November 28, 2018. *Id*. Continued placement was warranted following each review. *Id*.

Plaintiff was not isolated for the entirety of his stay in Protective Custody. On September 28, 2018, he signed a statement indicating that "[he had] no problems being out of cell for recreation purposes with any other Protective Custody inmates on E-POD." *Id*. This followed his submission of an Inmate Request Form on August 26, 2018, wherein he notified WCDC of his belief that he was not receiving his full allotment of recreational time. *See* Plaintiff's Inmate Request Forms, attached hereto as **Exhibit F**. Moreover, on October 24, 2018, Plaintiff "[agreed] to be in a cell with Rayon Franklin (110788) while on Protective Custody." *See* **Exhibit G**. Per his request, Plaintiff was removed from Protective Custody on or about January 8, 2019. *Id*.

IV.        **Allegation Regarding Court Access**.

Plaintiff's third prison condition that he complains of is Defendant Shockey's purported failure to provide him with a Grievance Form during his stay in Protective Custody.[7]  *See* Amended Complaint at 8, ECF No. 10.  The Amended Complaint seems to allege that Defendant Shockey "turned a blind eye" to the conditions that Plaintiff suffered in Protective Custody, refused to provide Plaintiff with a Grievance Form so that he may redress same, and thereby violated Plaintiff's due process rights.  *Id.*  Plaintiff further alleges that Defendant Shockey's refusal to provide him with a Grievance Form constitutes "[intentional interference]" with Plaintiff's access to the Court.

The Amended Complaint does not indicate the manner in which Plaintiff requested a Grievance Form, be it in person or in writing, nor does it indicate how Defendant Shockey denied Plaintiff a Grievance Form.  *Id.*  However, on August 26, 2018, Plaintiff submitted an Inmate Request Form wherein he alleged that he "[was not] getting the mandated 2 hours out of all recreation … [and that he had not] had rec [sic] on several occasion[s] that exceed 24 hours lock in cell time…."  **Exhibit F**.  Based on the date and description of the complaint, Defendants believe that Plaintiff used this Inmate Request Form to make his request for a Grievance Form.  The Staff Response to this request indicates that Defendant Shockey answered it on September 1, 2018 by sending a Grievance Form to Plaintiff.  *Id.*; *See* Affidavit of Chris Shockey, ¶ 4 attached hereto as

---

[7] This Honorable Court construed the Amended Complaint to raise Eighth Amendment claims related to "the denial of Hall's carpal tunnel surgery, the denial of replacement or repair of his dentures, and the alleged failure to properly screen inmates before assigning them to cells with other inmates."  *See* Order dated January 17, 2019, at 2, ECF No. 18.  Plaintiff's allegations concerning cell assignment are in close textual proximity to his allegation that Defendant Shockey denied him access to the Court while in Protective Custody.  *Id.* at 7.  Therefore, Defendants address both herein insofar as the latter allegation can be construed as derived from the former.

**Exhibit H**.  Plaintiff's Inmate File does not show that he submitted a Grievance Form following this Staff Response.  **Exhibit H** at ¶ 4.

A separate Inmate Request Form was submitted by Plaintiff on November 6, 2018.  **Exhibit F**.  Therein, Plaintiff alleges that he had been "intentionally [denied]" access to the Court.  *Id*.  Defendant Shockey again answered this request by forwarding a Grievance Form to Plaintiff.  **Exhibit H** at ¶ 5.  No Grievance Form appears to have been submitted following this response.  *Id*.

**V.      Plaintiff Submitted An Inmate Grievance Regarding His Medical Care, But He Did Not Submit Any Administrative Grievances Concerning Cell Assignment Or Court Access.**

There is an Inmate Grievance Procedure at WCDC, pursuant to which an inmate first submits an Inmate Request Form to receive a Grievance Form, and then submits the Grievance to a Captain, who investigates and responds to it.  **Exhibit C**, Rowe Affidavit, ¶ 2.  If the inmate is not satisfied with the outcome, the inmate may send a written appeal to the Warden, namely, Defendant Rowe.  *Id*.  Each Grievance Form submitted by an inmate is investigated as is appropriate for the particular grievance stated.  *Id*. at ¶ 3.  Inmates are directed to prepare a separate Grievance Form for distinct grievances, and to limit each Grievance Form to one grievance.  *Id*.

The timeline of events reveals that Plaintiff submitted a Grievance Form concerning his complaints about alleged substandard medical care at WCDC on August 14, 2018, which comes after Plaintiff initiated suit on July 11, 2018.  *See* **Exhibit E**, Plaintiff's Grievance Form; *see also* Temporary Restraining Order/Preliminary Injunction, ECF No. 1; Supplemental Complaint, ECF No. 4.  The grievance was denied by Defendant Long on August 22, 2018.  *Id*.  Plaintiff appealed to Defendant Rowe that same day who affirmed on September 4, 2018.  *Id*.  No record evidence

exists to suggest that Plaintiff completed the Grievance Procedure with respect to his complaints of cell assignment or court access.

## ARGUMENT

### I.      Standards of Review.

Federal Rule of Civil Procedure 12(b)(6) provides that a Complaint should be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, claims must be construed in the light most favorable to the non-moving party, and all well pleaded allegations should be accepted as true.  *See Martin Marietta Corp. v. International Telecomm. Satellite Org.*, 991 F.2d 94 (4th Cit. 1992); *Wikimedia Found. V. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  Dismissal is also appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.  *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).

A plaintiff's complaint must state a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal citations omitted); *see also Twombly*, 550 U.S. at 555 (citations omitted).  While construing those facts in a light most favorable to the plaintiff, the Court need not accept as true legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000).  Likewise, a court need not accept conclusory allegations concerning the legal effect of events plaintiff has

12

alleged if those conclusions do not reasonably follow from his description of what happened. *Ficker v. Chesapeake & Potomac Telephone Co.*, 596 F.Supp. 900 (D.Md. 1984).

A district court may take judicial notice of "matters of public record" without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Haley v. Corcoran*, 659 F.Supp. 2d 714, 722 (D.Md. 2009) (internal citations omitted). State court filings are matters of public record. *Id.* (citing *Boateng v. InterAmerican Univ., Inc.*, 210 F. 3d 56, 60 (1st Cir. 2000); *Henson v. CSC Credit Servs.*, 29 F. 3d 280, 284 (7th Cir. 1994)).

If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered in favor of a moving party when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Federal Rule of Civil Procedure 56 "mandates summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where, in a case "decided on summary judgment, there have not yet been factual findings by a judge or jury, and [one party's] version of events … differs substantially from [the other party's,] … courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* at 380 (quoting Fed. R. Civ. P. 56(c)). Moreover, "the mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact …. Factual disputes

that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–48, 106 S.Ct. 2505, 2510 (1986).

## II.   Plaintiff's Claim That He Was Denied Medical Care Fails Because As a Matter Of Established Law, Defendants Rowe And Long Were Entitled To Rely On The Medical Judgment Of Defendant Stewart.

Defendants Rowe and Long were both entitled by law and required by policy to rely on the

judgment of Defendant Stewart in her treatment of Plaintiff.  The instant record demonstrates this

is precisely what occurred.

The opinion of the United States Court of Appeals for the Fourth Circuit in *Miltier v. Beorn*,

896 F.2d 848 (4th Cir. 1990) (*overruled in part on other grounds* by *Farmer v. Brennan*, 511 U.S.

825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed. 2d 811 (1994)), is on point.  In *Miltier*, the Court of

Appeals affirmed summary judgment in favor of the correctional officials on claims of deliberate

indifference arising from the death of an inmate.  In finding that the correctional officials could

(and should) rely on the medical staff, the *Miltier* court reasoned as follows:

> Miltier points to correctional expert Joseph P. Gallagher's testimony to the effect that the four supervisory defendants' actions **went far afield of any accepted correctional standards**.  **Taking his testimony as true, as we must for the purposes of ruling on the propriety of summary judgment for the supervisory defendants, this testimony alone is simply insufficient to create a triable issue**. *Cf.* [*Rogers v. Evans* 792 F.2d 1052, 1058 (11th Cir. 1986)] (plaintiff's allegation that the prison failed to meet standard derived from model standards for good prison administration failed to rise to the level of an eight amendment violation).  Even assuming that the physicians' failure to provide a cardiac exam was a "pervasive and unreasonable risk of harm from some specified source," *see* [*Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)], **it would be an unprecedented extension of the theory of supervisory liability to charge these wardens, not only with ensuring that Gwendolyn received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures—procedures learned during several years**

14

> **of medical school, internships, and residencies. No record evidence
> suggests why the wardens should not have been entitled to rely upon
> their health care providers' expertise. Moreover, everything in the
> record suggests that the wardens closely monitored Gwendolyn's
> health and ensured that the she received medical treatment.** *See* [*Boyce
> v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979)]. **Although record evidence
> suggests that the wardens were aware of Gwendolyn's deterioration, it
> would be ironic indeed if their awareness, resulting from close
> monitoring of Gwendolyn's condition, became the vehicle by which
> they were rendered liable under § 1983 for their subordinates'
> misconduct**.

*Miltier*, 896 F.2d at 854–55.

The reasoning of *Miltier* was reiterated by the Court of Appeals in *Shakka v. Smith*, 71 F.3d

162 (4th Cir. 1995). In *Shakka*, the Court of Appeals affirmed summary judgment in favor of

correctional officials, including line officers, on a claim by an inmate that temporary removal of

his wheelchair, on the orders of the prison psychologist amounted to deliberate indifference. The

Court of Appeals reasoned:

> Further, it is undisputed that prison psychologist Fuhrmaneck, who is not a
> defendant, instructed that Shakka's wheelchair be removed temporarily for
> Shakka's own protection and the protection of others. Shakka does not
> challenge the assertions of prison officials that the remaining defendants—
> Byrnes, Hutchins and Wells—lacked the authority to provide the
> wheelchair to Shakka in contravention of Fuhrmaneck's orders, they might
> have incurred liability for interfering with Shakka's treatment. *Cf. Miltier
> v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison
> officials are entitled to rely on professional judgment of trained medical
> personnel and may be found to have been deliberately indifferent by
> intentionally interfering with a prisoner's medical treatment ordered by
> such personnel).

*Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995).

The *Miltier* opinion continues to be cited for this proposition by this Court. In *Gardner v.

United States*, 184 F.Supp. 3d 175 (D.Md. 2016), the Honorable James K. Bredar entered summary

judgment in favor of a correctional officer on an Eighth Amendment/wrongful death claim where

the facts included that the decedent inmate suffered a heart attack after having been directed by

15

the correctional officer to engage in strenuous outdoor work on an extremely hot day.   Judge

Bredar wrote:

> Even assuming, however, that Officer Bennett was somehow familiar with
> the Decedent's medical history, such familiarity would not expose him to
> Eighth Amendment liability because he was entitled to rely on the
> professional judgment of the medical personnel who were responsible for
> the Decedent's care.  *See Krug v. Loranth*, No. 1:13–cv–01409–DCN, 2014
> WL 4955365, at *7 (D.S.C. Sept. 29, 2014) ("[N]on-medical prison
> personnel are entitled to rely on the expertise of health care providers."
> (citing [*Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008)]), *aff'd* 599
> Fed.Appx. 512 (4th Cir. 2015) (mem.); *accord Muhammad v. Smith*, No.
> 7:16CV00034, 2016 WL 1464640, at *4 (W.D.Va. Apr. 12, 2016); *Ingram
> v. Warden*, Civ. No. WDQ–14–561, 2015 WL 4129222, at *8 (D.Md. July
> 6, 2015); *Dicks v. Flury*, Civ. No. GLR–14–1016, 2015 WL 847409, at *5
> (D.Md. Feb. 25, 2015); *Sloan v. Lee*, Civ. No. JKB 13-3843, 2015 WL
> 273219, at *17 (D.Md. Jan. 20, 2015).

*Gardner*, 184 F.Supp. 3d at 191.  *See also Marshall v. Stewart*, No. CV TDC–16–1645, 2017 WL

3671160, at *5 (D.Md. Aug. 23, 2017) ("Significantly, as a non-medical correctional supervisor,

Warden Stewart was entitled to rely on the medical opinions and expertise of the professionals

working in FCI-Cumberland Health Services regarding the treatment of Marshall's condition.").

As applied here, WCDC's medical personnel evaluated Plaintiff on multiple occasions with

respect to his complaints of carpal tunnel syndrome and dentures.    Defendant CCS's medical

personnel determined that these issues did not pose an emergent or urgent threat to Plaintiff.

Rather, it was concluded that carpal tunnel syndrome is a chronic ailment that Plaintiff could

address on his own through follow-care upon his release and that Plaintiff's dentures were broken

prior to his incarceration.  Therefore, because Defendants Rowe and Long were entitled to rely on

the judgment of Defendant Stewart as it related to her treatment of Plaintiff, they are entitled to

dismissal with prejudice and or summary judgment on all claims arising from Plaintiff's medical

treatment.

**III.      In The Alternative, Defendants Rowe And Long Are Entitled To Qualified Immunity From Plaintiff's Claim Under 42 U.S.C. § 1983**.

"[A] defendant is entitled to qualified immunity in a § 1983 case if (1) his or her conduct did not violate the constitutional right at issue or (2) the right was not "clearly established" at the time of the incident." *Strickland v. Halsey*, 638 F.Appx. 179, 184 (4th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).  "Succeeding on either prong is sufficient for entitlement to qualified immunity, and courts may begin with either prong." *Id*.  (citing *Pearson*, 555 U.S. at 234, 129 S.Ct. 808, 172 L.Ed.2d 565).

**A.      Plaintiff's Constitutional Rights Were Not Violated**.

"The Eighth Amendment to the United States Constitution prohibits prison officials from inflicting 'cruel and unusual punishments' by acting with deliberate indifference to a prisoner's serious medical needs." *Goodman v. Runion*, 676 Fed.Appx. 156, 159 (4th Cir. 2017) (quoting U.S. CONST. amend. VIII) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  This standard for a convicted prisoner is the same as the standard for a pretrial detainee under the Due Process Clause of the Fourteenth Amendment, "that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.'" *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (quoting *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990)).

"To prevail in a medical needs case, the inmate must satisfy the two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." *Goodman*, 676 Fed.Appx. at 159.  "First, the inmate must demonstrate the defendant's deliberate indifference to an objectively sufficiently serious medical need … that has either been diagnosed by a physician as mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citations omitted) (quotations omitted).  "Second, under

17

the subjective prong, the inmate must prove that the defendants acted with a sufficiently culpable state of mind …. The inmate must show that the defendant actually knew of and disregarded a substantial risk of serious injury … or that they actually knew of and ignored a … serious need for medical care." *Id*. at 159–160.

Constructive notice is insufficient to show actual knowledge. *Farmer*, 511 U.S. 825, 840–42, 114 S.Ct. 1970, 128 L.Ed.2d 811. "[N]or is it enough that the prison official should have recognized a substantial risk." *Cook v. Jones*, 606 F.Appx. 131, 132 (4th Cir. 2015) (citing *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)). *Id*., citing *Danser v. Stansberry*, 772 F.3d 294, 303 (4th Cir. 2014)). "Even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016), *cert. denied sub nom. Phillip v. Scinto*, 138 S.Ct. 447, 199 L.Ed. 2d 340 (2017) (quoting *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970, 128 L.Ed. 2d 811).

Here, there is no basis to conclude that either Defendant Long or Defendant Rowe acted with deliberate indifference to Plaintiff's medical needs. To the contrary, record evidence indicates that Defendants promptly investigated Plaintiff's complaints and that they acted reasonably under the circumstances as compared to Plaintiff. For instance, the timeline shows that Plaintiff notified Defendant Long of his alleged need for corrective surgery and replacement dentures on or about August 14, 2018. *See* **Exhibit F**, Plaintiff's Inmate Request Forms. Just three days later, on or about August 17, 2018, Defendant Long directed Plaintiff's complaint to WCDC's Administrative Health Specialist, Ms. Dawn Miller, with the instruction to "look into [the] matter in an attempt to resolve the issue and respond to [it] at [her] earliest convenience." *Id*.

This same day, Plaintiff decided to abort his medical sick-call with Defendant Stewart mid-stream after being advised that carpal tunnel syndrome is a chronic health complaint. *See* **Exhibit**

**D**, Plaintiff's Medical Records Selection (observing that Plaintiff got "[a]ngry and left exam room when advised these are _chro9nic_ [sic] issues that will need further eval [sic] and consideration but no guarantee of "emergency" surgery as he demands.  _Refused exam_ and left room angry 'the Judge will here [sic] this.'") (emphasis added).  In or about the same time that Plaintiff refused treatment at WCDC, Ms. Miller learned, rightly or wrongly, from Robinwood Orthopedics that Plaintiff was last seen by the clinic in October, 2017, and that Robinwood Orthopedics' medical file for Plaintiff contained "_no reference for any type of revision being needed at that time._" **Exhibit F** (emphasis added).

Thus, the information available to Defendant Long and Defendant Rowe when they denied Plaintiff's request for corrective surgery on August 22, 2018 and September 4, 2018, respectively can be summarized as follows: (1) Dr. Stewart's determination that carpal tunnel syndrome is a chronic ailment for which Plaintiff did not require emergency surgery, (2) Plaintiff's refusal to be evaluated further by Dr. Stewart, (3) medical records that showed Plaintiff's clinic had treated Plaintiff's pain following his surgeries through pain medication, time off from work, reduced activities and physical therapy, (4) the belief communicated by Robinwood Orthopedic that Plaintiff had not been to the clinic since October, 2017, despite having the ability to do so until the date of his arrest on June 15, 2018—a span of nearly eight months and (5) Robinwood Orthopedics' indication that their files contained no record of Plaintiff's treatment being revised.

Likewise, Defendants Long and Rowe were not deliberately indifferent to the state of Plaintiff's dentures.  The Amended Complaint makes no allegation that Plaintiff was unable to eat or drink during the pendency of his stay at WCDC.  _See generally_ Amended Complaint, ECF No. 10.  Instead, the Amended Complaint links the need for repair or replacement dentures to the side-

19

effects that gastrointestinal acid reflux "can lead to[.]" *Id*. at 1; 4.   No particularized harm was alleged. *Id.*

Plaintiff's complaint can thus be characterized as a disagreement between himself and Defendant CCS about who bears the responsibility of repairing or replacing the dentures. "Generally, … [a disagreement] between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim." *Goodman v. Runion*, 676 Fed.Appx. 156, 160 (2017) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)) (other citation omitted).  Moreover, it is irrelevant as to who had the better argument, because the Eighth Amendment is not violated when a delay in medical care does not result in injury. *Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir. 1993).  If Plaintiff's claim is that there was a deficiency in his dental treatment, that also does not state a claim against Defendants Rowe and Long.  Defendants Rowe and Long had no authority to overrule the medical judgments of Defendant CCS personnel, and have no liability for those medical judgments. *See West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987) (prison Director not liable under § 1983 for prison doctor's medical judgments when he had no authority to overrule those judgments).

The Amended Complaint therefore fails to state a claim of violation of the Eighth Amendment by deliberate indifference to serious medical needs, and that claim must be dismissed. In the alternative, summary judgment should be granted because there is no genuine dispute as to the material facts and Defendants are entitled to summary judgment as a matter of law.

**B.     Even If There Had Been A Violation Of Plaintiff's Constitutional Rights, And There Was None, The Rights Were Not Clearly Established**.

A constitutional right becomes "clearly established" in any of three ways: (1) an authoritative decision by the United States Supreme Court; (2) an authoritative decision by the Fourth Circuit Court of Appeals, or (3) an administrative decision by the Court of Appeals of

Maryland.  *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *aff'd* 526 U.S. 603, 119 S.Ct. 1692 (1999).

For the same reasons set forth in Section II above, i.e., that Defendants Rowe and Long were entitled to rely on the judgment of Defendant Stewart and other medical personnel at WCDC, Defendants Rowe and Long are entitled to qualified immunity from Plaintiff's claim under 42 U.S.C. § 1983.  These Defendants were acting within a jurisdiction where the established law provides that correctional officers are entitled to (and should) rely on the medical judgment of the medical staff.  The concept that Plaintiff had a clearly established right to some form of elevated conduct beyond the conduct in which Defendants Rowe and Long were engaged is entirely unwarranted, as there are no authoritative controlling decisions to support Plaintiff's position. Therefore, on the strength of the second prong of the qualified immunity analysis, Defendants Rowe and Long are again entitled to qualified immunity in connection to Plaintiff's claims of substandard medical treatment.

**IV.     All Claims Fail Because Plaintiff Failed To Exhaust WCDC's Grievance Procedure**.

The Prison Litigation Reform Act ("PLRA") requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court.  42 U.S.C. § 1997e(a), *unconst'l on other grounds*, *Siggers-El v. Barlow*, 433 F.Supp.2d 811, 816 (E.D. Mich. 2006), provides, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted this language broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA exhaustion provision plainly extends to Plaintiff's allegations.

The PLRA's exhaustion provision is designed so that prisoners pursue administrative grievances and appeal through all stages in the administrative process until they receive a final denial of the claims.  *See Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief."); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943–44 (D.Md. 1997) (dismissing a prisoner's lawsuit for failure to exhaust administrative remedies, where the plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

As applied here, Plaintiff did not properly exhaust his administrative remedies before filing suit.  The Grievance Form that Plaintiff submitted for alleged substandard medical care is dated August 14, 2018.  *See* **Exhibit E**, Grievance Form.  Defendant Long denied it on August 22, 2018. *Id*.  Plaintiff appealed that same day to Defendant Rowe who affirmed on September 4, 2018.  *Id*. Therefore, Plaintiff, who filed the instant action on July 11, 2018, brought suit nearly two months before exhausting WCDC's Grievance Procedure.  The requirement that administrative remedies be sought prior to initiation of suit is supported by sound policy.  It should not be departed from despite the fact that Plaintiff's complaints of substandard medical care were ultimately exhausted by the Grievance Procedure.

Record evidence demonstrates that Plaintiff submitted Inmate Request Forms for the purpose of obtaining Grievance Forms with respect to recreational time and access to the Court. *See* **Exhibit F**, Plaintiff's Inmate Request Forms.  WCDC's records do not show that Plaintiff ever followed through on either of these Inmate Request Forms by submitting a Grievance Form.  *See*

**Exhibit C**, Affidavit of Defendant Rowe, ¶ 7.  Moreover, there is no record evidence that Plaintiff ever submitted an Inmate Request Form desiring a Grievance Form that would address WCDC's practice of assigning inmate cells.  *Id.*  Therefore, because Plaintiff did not pursue administrative remedies to address these latter concerns, the PLRA bars his proceeding with litigation of same.

**V.      Even If It Were Appropriate For This Court To Consider Plaintiff's Claims Concerning Cell Assignment And Access To The Court, And It Is Not, Those Claims Fail**.

The Amended Complaint fails to state a claim of an Eighth Amendment violation based on the alleged failures to properly assign inmate cells and permit access to the Court—both of which stem from Plaintiff's voluntary decision to seek Protective Custody.  This Circuit, like other circuits, has followed the reasoning of the United States Supreme Court that the day-to-day operations of a detention center are matters that should remain the province of the officials who manage the detention center, in the interest of security and safety:

> **[D]ecisions relating to the accommodation of inmates, such as cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison officials**.  *See Pitts v. Thornburgh*, 866 F.2d 1450, 1453–54 (D.C.Cir. 1989) (distinguishing between "cases involving regulations that govern the day-to-day operation of prisons" and those that involve "general budgetary and policy choices made over decades in the give and take of city politics," and concluding that the former is entitled to significantly more deference than the latter).   Second-guessing such judgments "would seriously hamper [the prison officials'] ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner* [*v. Safley*], 482 U.S. [78,] 89, 107 S.Ct. 2254 [(1987)].

*Veney v. Wyche*, 293 F.3d 726, 732–33 (4th Cir. 2002).  It is further established beyond cavil that prison regulations are designed to guide correction officials in the management of the facility, not to confer rights on inmates.  *Sandin v. Conner*, 515 U.S. 472, 482 (1995).  An internal policy of a prison facility does not by itself create a constitutionally protected interest. *Riggins v. Green*, No.

PJM–09–289, 2009 WL 7042240, at *3 (D.Md. May 21, 2009), *aff'd* 332 F.App'x. 867 (4th Cir.

2009).

Accordingly, Plaintiff's complaint regarding inmate cell assignments that he alleges led to

Defendant Shockey's failure to protect him from Inmate Jack Phillips does not constitute a

violation of constitutional proportions.  Instead of being the arbitrators of inmates' discontent with

their conditions of confinement, the federal courts are required to accord great consideration to a

correctional system's need to maintain order, discipline and control.  *See Sandin*, 515 U.S. at 483–

84 ("Federal courts ought to afford appropriate deference and flexibility to state officials trying to

manage a volatile environment.")  Plaintiff's challenge to his cell assignment amounts to the

identification of an inconvenient condition that does not state a constitutional claim.  For that

reason, the Complaint should be dismissed, with prejudice.

Plaintiff's assertion that Defendant Shockey effectively denied him access to the Court by

refusing to issue him a Grievance Form on which he could lodge complaints having to do with his

placement on protective custody is meritless.  *See* Amended Complaint at 8, ECF No. 10.  First,

Plaintiff fails to allege when Defendant Shockey denied him the Grievance Form.  *Id*.  Second,

Plaintiff fails to state how he made his request.  *Id*.  However, both of these unknowns are

apparently resolved by Plaintiff's Inmate Request Form dated August 26, 2018, wherein he levies

similar allegations against his placement on Protective Custody as the ones reflected in his

Amended Complaint.  *See* **Exhibit F**, Plaintiff's Inmate Request Forms; Amended Complaint at

7, ECF No. 10.  Both imply that his placement in protective custody resulted in him losing

recreational time.  Defendant Shockey testifies in his Affidavit that he answered this request by

forwarding a Grievance Form to Plaintiff.  *See* **Exhibit H**, Defendant Shockey's Affidavit at ¶4.

Thus, record evidence demonstrates that Defendant Shockey did provide Plaintiff with the

appropriate form to initiate the Grievance Procedure.  Nonetheless, no Grievance Form was submitted by Plaintiff for this specific complaint.  *Id.*; **Exhibit C**, Defendant Rowe's Affidavit at ¶7.  For that reason, the Complaint should be dismissed, with prejudice.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request the Court to dismiss Plaintiff's Amended Complaint with prejudice against the Defendants for failure to state a claim upon which relief can be granted, or, in the alternative, grant summary judgment in favor of the Defendants and other such relief as their cause may demand.

KARPINSKI, COLARESI & KARP, P.A.

BY:           /s/
KEVIN KARPINSKI, #11849
Suite 1850
120 East Baltimore Street
Baltimore, Maryland 21202-1617
410-727-5000
Kevin@bkcklaw.com
*Attorney for Defendants Rowe, Long and Shockey*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March 2019, a copy of the foregoing was electronically filed and sent by first class mail, postage prepaid, to:

Mr. James Hall, ID 126946
Washington County Detention Center
500 Western Maryland Parkway
Hagerstown, Maryland 21740
*Pro se Plaintiff*

          /s/ Kevin Karpinski
*Counsel for Defendants Rowe, Long and Shockey*